**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| RACHEL JOHNSON | CIVIL ACTION NO.: 2:26-cv-01389-BHH |
| Plaintiff, | |
| vs. | **COMPLAINT**<br>(Jury Trial Demand) |
| TRUE BLUE HOME RENTALS, LLC, DANA COTHRAN, AND MATTHEW MANAKER, | |
| Defendants. | |

**TO WESLEY SOUTHERN AND CHRIS MURPHY, ATTORNEYS FOR THE ABOVE-NAMED PLAINTIFF/DEFENDANTS, MATTHEW MANAKER, AND THIRD-PARTY DEFENDANT OR, KYLE COOPER, ATTORNEY FOR THE ABOVE-NAMED THIRD-PARTY DEFENDANT DANA COTHRAN:**

Plaintiff, Rachel Johnson (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby complains of the above referenced Defendants and shows unto this Honorable Court as follows:

**<u>PARTIES</u>**

1. Plaintiff is a resident of the State of South Carolina pursuant to the Residential Rental Agreement (hereinafter referred to as "the Lease") with Defendant True Blue Home Rentals, LLC (hereinafter referred to as "Defendant Property Manager" or collectively as "Defendants"), who was at all relevant times, acting on behalf of Defendant Dana Cothran (hereinafter referred to as "Defendant Owner" or collectively as "Defendants") and/or Matthew Manaker (hereinafter

referred to as "Defendant Individual" or collectively as "Defendants"), for the rental Property located at 1742 Wyngate Circle, Mt. Pleasant, South Carolina 29466 (hereinafter referred to as "the Property").

2.    Defendant True Blue Home Rentals, LLC is organized pursuant to the laws of the State of South Carolina with its principal place of business 1430 Ashley River Rd, Charleston, SC 29407, and having a registered agent for process, Matthew Manaker, who can be can be served with process at 901 Compass Point, Charleston South Carolina 29412.

3.    Defendant Matthew Manaker is a citizen and resident of the State of South Carolina, County of Charleston where he can be served with process at 901 Compass Point, Charleston, South Carolina 29412.

4.    Defendant Dana Cothran is a resident of Haywood County, State of North Carolina where she resides at 6911 Old Clyde Road, Canton, North Carolina 28716 where she can be served with process.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims under the Fair Credit Reporting Act (FCRA) 15 USC § 1681.

6.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the events giving rise to these claims occurred in this district, and the property at issue is located within this district.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

7.    Plaintiff restates, realleges, and incorporates by reference herein paragraphs 1-6 as if fully restated herein.

1

8.      Defendant entered into a Residential Rental Agreement (hereinafter referred to as "the Lease") with Defendant Manaker and/or Defendant Property Owner, who was acting as Defendant Owner's agent for the Property located at 1742 Wyngate Circle, Mt. Pleasant, South Carolina 29466.

9.      Pursuant to the terms of the Lease, Plaintiff paid a security deposit of $1,695.00, and agreed to pay $1,995.00 being due on the 1st of every month, with late fees of $85.00 plus an additional Five Dollars and 00/100 per day.

10.     Shortly after moving in, Plaintiff began discovering, and experiencing, issues with, amongst other things, loss of hot water, broken dishwasher, leaking sink, a broken stove, a broken toilet, and black mold around the air conditioning vents.

11.     After Plaintiff submitted numerous requests for "work orders" for the repairs, an appliance repair man responded determining the issues related to the plumbing of the unit, therefore, he was not capable of repairing the issues.

12.     Plaintiff continued to make "work order requests," at Defendants' request, seeking a plumber to address the issues rather than an appliance repairman or any other tradesman.

13.     During this time, Defendants continually reassured Plaintiff that a plumber was contacted, the plumber would be in contact with Plaintiff to assess the issue, and despite these representations, no plumber was ever contacted by Defendants.

14.     When weeks went by without a plumber responding, Defendant retained counsel to assist in resolving the issues.

15.     On August 20, 2025, counsel for Defendant contacted Defendant Individual at his prior business, Charleston Home Rentals, LLC's, email seeking for Defendant Individual to contact a plumber to avoid instituting litigation as to the issues.

2

16. With the exception of a few communications with Defendant Manaker's and/or Defendant Property Owner's manager, all communications about the issues were directly with Defendant Manaker who, upon information and belief, was acting in his individual capacity and/or as agent of Defendant Property Manager on behalf of Defendant Owner.

17. Based on Plaintiff's personal knowledge as further outlined below, her understanding of Defendant Individual's personal involvement in this matter, and her understanding of Defendant Individual's personal involvement holding himself out to be Defendant Property Manager or other entities, Plaintiff is informed and believes Defendant Individual utilizes Defendant Property Manager as an "alter ego" for his personal business dealings, and upon information and belief, Defendant Individual has complete control of Defendant Property Manager, and upon information and belief, Defendant Individual utilizes the Defendant Property Manager inconsistent with South Carolina's Uniform Limited Liability Company Act, Defendant Property Owner's Operating Agreement, or lack thereof, and/or in violation of other laws of corporate governance allowing Plaintiff to "pierce the corporate veil" of Defendant Property Owner. (S.C. Code Ann. § 33-44-101 *et seq.*).

18. In furtherance of Defendants' businesses collectively, Defendants confirmed their knowledge of the needed repairs and, specifically, referenced the leaking sink in the hallway, changing the air filters, repairing the dishwasher, noting the loss of hot water, as well as the appearance of black mold around the vents.

19. On August 21, 2025, Defendants responded to Plaintiff's latest request for a plumber stating the "vendor was there in the past two weeks, completed all the checklist items directly with the Resident. The same vendor will reach out to the Resident today to schedule access for the new

3

attached work order.  If there is anything else, we would ask the Resident to create a work order through their portal…"

20.     As Plaintiff was instructed, she continued to create "work orders" for a plumber, and specifically stated to that Defendants' continued insistence on sending an "appliance repairman" to the unit was insufficient because he was not a plumber, and even according to the "appliance repairman," he could not perform the needed repairs.

21.     On October 9, 2025, when Plaintiff received no response from Defendants, and no plumber had contacted Plaintiff, come to her unit, nor did Defendants otherwise evidence any intent to send a plumber, Plaintiff made another specific request for Defendants to send a plumber to the unit.

22. Specifically, Defendant stated:

> "…**all she needs is a plumber**, and you won't hear from [Plaintiff] again.  There is an issue with the water "plugs" popping in/out causing the hot water to turn off, therefore, the dishwasher doesn't cycle hot and the sinks have no hot water.  The only other issue is the back toilet is leaking." (emphasis added)

23.     In response, rather than addressing Defendants' failure to secure a plumber, Defendants claimed Plaintiff was in breach of the Lease for allowing her boyfriend to sleep overnight at the Property.

24.     Given Defendants and Defendants' manager's allegations of breach by Defendant relating to her boyfriend sleeping periodically at the unit, Plaintiff sought confirmation in writing Defendants were not alleging Plaintiff was in breach of the Lease for any reason.

25.     In response to Plaintiff's request for confirmation she was not in breach of any provision of the Lease, on October 10, 2025, Defendants responded to Plaintiff's concerns stating no eviction was filed relating to Plaintiff's boyfriend and, furthermore, a "work order" was submitted on October 6, 2025 for a plumber, to address the plumbing issues.

4

26. On October 28, 2025, two weeks before the Plaintiff's and the unit beneath her flooded, and three weeks after Defendants' prior communication seeking a plumber to respond to the Property, Plaintiff emailed Defendants again stating:

"…[n]o plumber contacted my client at any time since the last emails nearly a month ago.  Given the issues (water temp in kitchen/bathrooms, leaking sink in hall bathroom, toilet in same bathroom - she said this was previously approved, and window screens) have not been addressed or there was some miscommunication with the plumber, given nobody responded,  I have to send a time limit demand.  **If you could please follow up with Ms. Dumas to ensure the plumber gets out there asap so they have hot water without a leaking sink, I will refrain from sending the letter.**  The toilet and the screens, arguably, may not meet the threshold of "emergency repairs," although they need to be addressed as they were previously discussed between Ms. Dumas and my client. (emphasis added)

27. On the same day, Defendants responded claiming Plaintiff was responsible for Defendants' inability to have a plumber respond to the unit because Defendants claimed Plaintiff was not home when the plumber previously arrived at the Property.

28. In response, counsel for Plaintiff offered to be added as an additional contact to ensure Defendants could not shift the blame to Plaintiff for Defendants' failure to contact a plumber since she began asking more than three months prior.

29. According to Defendants, counsel for Defendant could not be added as an additional contact because counsel for Defendant was not on the Lease.

30. Defendants' statements were made to frame their defenses of claiming an inability to schedule and false allegations Plaintiff refused to allow the plumber's entry given Defendants

5

knew there was no issue, legally or otherwise, with Plaintiff using her "power of attorney" to act on her behalf.

31.     On November 3, 2025, approximately two weeks after Plaintiff's latest ignored request for a plumber, Plaintiff sent another email in anticipation of the litigation stating:

"Unfortunately, the issue of the sink leaking remains, and the dishwasher continues to be an issue.  According to the appliance man who repaired the stove, **everything remaining were plumbing issues.  However, the dishwasher is now emitting water containing some type of black material (maybe dirty water?).  The most recent repair man, who I believe was the same person who repaired the stove, was unable to repair the sink, dishwasher, or the toilet."**(emphasis added)

32.     On November 11, 2025, Plaintiff awoke to knocking on the door believing the plumber had finally arrived to address the issue, only to learn the knocks were from the neighbor beneath her inquiring as to the condition of the Property due to the flooding penetrating the unit below from Plaintiff's unit.

33.     As Plaintiff approached the door, she realized there was two inches of standing water, which had accumulated throughout her entire apartment, causing damage to, amongst other things, hers and her teenage children's personal belongings, furniture, and other valuables.

34.     Immediately thereafter, Plaintiff notified Defendants of the flood pursuant to the terms of the Lease.

35.     Instead of asking appropriate questions, Defendants communicated to Plaintiff she was being evicted for her boyfriend's presence at the unit at the time of the flood.

36. Defendants' reaction to the longstanding, easily anticipated event evidences Defendants' "guilty conscious" and retaliatory intent to evict, as well as Defendants' complete and total lack of concern or empathy for the situation.

37. Shortly thereafter, Defendants' on-site repairman gained "emergency access" to the unit holding only a mop.

38. Understanding the issue required more than a mop, although not preventing Defendants' entry, Plaintiff asked Defendants' agent to leave until a plumber, remediation company, or other appropriately qualified professional responded.

39. While awaiting for the appropriate response from Defendant, Plaintiff was contacted by Defendant Individual, who claimed he needed access to the Property pursuant to the emergency access provisions of the Lease, and that his plumber could not work with any party "looking over their shoulder."

40. In response to Defendant Individual's concerns, Plaintiff notified Defendants she was not restricting access to the Property, and was only asking that a qualified party be contacted as she had requested for the past four months.

41. Plaintiff immediately contacted her own plumber due to Defendants' prior failures to procure a plumber, Defendants' continued insistence on providing unqualified parties such as an appliance repairman or an on-site maintenance man with a mop, and Defendants' other actions and omissions causing the flood.

42. Defendants continued to insist Plaintiff was refusing access despite evidence demonstrating Plaintiff continued to ask when the remediation company would be responding.

43. Plaintiff's plumber arrived within a short time of the flood's inception, was able to diagnose the cause, and explained how Defendants' negligence, in failing to repair damaged plastic piping under the hallway bathroom sink, caused the flood.

44. Plaintiff's plumber was able to complete the work promptly thereafter, at approximately 10:30 a.m., while Defendants plumber did not arrive at the unit until approximately 2:30 p.m.

45. Defendants' own plumber provided Plaintiff with an estimate previously provided to Defendants in February of 2024, approximately eighteen months prior, demonstrating Defendants had knowledge of the repairs needed, and not only refused to address the situation until Plaintiff had suffered significant damages, but misrepresented their knowledge to Plaintiff repeatedly through their words, actions, and/or omissions.

46. In addition to the estimate from February of 2024, Defendants' plumber's repair invoice from the day of the flood confirms Plaintiff's allegations including but not limited to Plaintiff's plumber's findings as to cause, origin, and resulting damages, stating the plastic plumbing under the leaking sink was where the issue began, and confirmed the issue's existence since, at least, February of 2024.

47. Due to Defendants' knowledge of the issue, their refusal to repair the issue, and their continued perceived ignorance of the issue despite their knowledge, Defendants are grossly negligent entitling Plaintiff to treble damages, punitive damages, attorney fees, and other relief to deter such similar conduct of Defendants.

48. On November 12, 2025, Defendants maintained they never made any statements regarding the eviction of Plaintiff or Defendant's boyfriend's presence in the unit either prior to the flood or following the flood.

49.    On or about November 12, 2025, Plaintiff deposited the total rental amount outstanding including late fees of $2,195.00 into her attorney's trust account, which was confirmed with Plaintiff's counsel the same day, that funds would be available on November 13, 2025.

50.    Plaintiff paid rent into her counsel's trust account before the 5th of each month in the amount of $2,195.00.

51.    Despite paying the rent timely into a "trust account" where Defendants was aware the money was being held pending the outcome of the issues contained herein, Defendants reported Plaintiff and Plaintiff's co-signor of the Lease for nonpayment of rent causing immediate, and upon information and belief, permanent damage to both Plaintiff's and her co-signor's credit reports.

52.    As a result of the false reporting in violation of The Fair Credit Reporting Act, Plaintiff is unable to relocate from the premises or obtain alternative living conditions, which Defendants refuse to take action to remedy and/or prevent further damage.

## FOR A FIRST CAUSE OF ACTION
### VIOLATION OF S.C. RESIDENTIAL LANDLORD TENANT ACT
(All Defendants)

53.    The Plaintiff adopts, re-alleges, and incorporates herein by reference paragraphs 1-52 as if fully set forth therein.

54.    Plaintiff is a tenant of the Property pursuant to the Lease with Defendants.

55.    Defendants are landlords and/or agents of the Property responsible for maintaining the property in compliance with the South Carolina Residential Landlord and Tenant Act ("SCRLTA"). S.C. Code Ann. § 27-40-10 *et seq.* and other applicable law.

56.    Pursuant to S.C. Code Ann. § 27-40-440(a), a landlord is required to, amongst other things,

9

a. Comply with the requirements of applicable building and housing codes materially affecting health and safety;

b. Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition; and

c. Maintain in good and safe working order all plumbing, sanitary, and other facilities supplied or required to be supplied.

57. Since the inception of the Lease, Plaintiff notified Defendants, verbally and in writing, for months on a nearly weekly basis of, amongst other things, persistent plumbing issues such as leaks in the bathroom, the sink, and the dishwasher.

58. Despite receiving notice and having prior knowledge through their own investigation into the matter more than a year prior, Defendants refused to timely repair the plumbing defects.

59. As a direct and proximate result of Defendants' failures to make repairs, the plastic piping below the hallway bathroom's sink completely failed on or about November 11, 2025 causing a substantial amount of water intrusion and flooding throughout the Property.

60. As a direct and proximate result of Defendant's failures to make the repairs, the flooding of polluted plumbing water caused damage to Plaintiff's, and her children's, personal property, clothing, shoes, furniture, and, essentially, everything Plaintiff and her family had accumulated throughout their lives.

61. Defendants and Third-Party Defendants' acts and omissions created hazardous and/or otherwise uninhabitable living conditions, forced Plaintiff, as well as her teenage children, to vacate the Premises, and caused Plaintiff additional losses including but not limited to:

a. Property damage;

b. Costs of temporary housing;

    c.   Repair costs;

    d.   Loss of use and enjoyment of the property;

    e.   Emotional distress/inconvenience;

    f.   Loss wages; and

    g.   All other damages recoverable under South Carolina law.

62. Defendants' failure to repair the known plumbing defects constitutes a material noncompliance with S.C. Code Ann. § 27-40-440 and, therefore, a violation of the SCRLTA.

63. Pursuant to S.C. Code Ann. § 27-40-610 and § 27-40-640 and/or elsewhere, Plaintiff is entitled to actual damages, injunctive relief, and any other remedies available at law, including reasonable attorney's fees, treble damages, and punitive damages.

**FOR A SECOND CAUSE OF ACTION**
GROSS NEGLIGENCE, NEGLIGENCE, AND NEGLIGENCE *PER SE*
(All Defendants)

64. The Plaintiff adopts, re-alleges, and incorporates herein by reference paragraphs 1-63 as if fully stated herein.

65. At all relevant times, Defendants, acting as landlords and/or agents of Defendant Individual and/or Defendant Owner, owed Plaintiff a duty of reasonable care to maintain the property:

    a.   in a habitable, safe, and otherwise suitable living condition;

    b.   to make necessary repairs;

    c.   to make the repairs within a reasonable time after receiving notice;

    d.   to prevent foreseeable harm arising from defective or hazardous conditions; and

    e.   to comply with S.C. Law including but not limited to the S.C.R.L.T.A.

66. Since the inception of the Lease, and continuing until the flood, Plaintiff continuously notified Defendants of the ongoing plumbing leaks and water intrusion at the Property.

11

67.     Plaintiff communicated these issues as well as others on a nearly weekly basis throughout the eight-month period without Defendants making the necessary repairs.

68.     Defendants knew the plumbing system and, specifically, the plastic piping beneath the sinks needed replacement, as evidenced by the prior estimate of their own plumbing contractor.

69.     Defendants knew of the unreasonable risk of significant property damage and personal harm their failure to replace the piping posed to Counterclaimant.

70.     Defendants breached their duty of care by failing to timely inspect, repair, or remedy the plumbing defects, as well as the other issues Plaintiff complained of.

71.     As a direct and proximate result of Defendants' negligent acts and omissions, amongst other issues, the plumbing system failed on or about November 11, 2025 causing substantial flooding and water intrusion within the Property.

72.     The flooding caused foreseeable and preventable damages to Plaintiff as indicated in correspondence with Defendants, and as will be more fully set out in discovery.

73.     The acts and omissions of Defendants were made with a conscious and voluntary reckless disregard of their legal duty, and the consequences to Plaintiff and, therefore, Defendants actions were taken without any want of even slight or scant care making Defendants grossly negligent.

74.     The acts and omissions of Defendants were made in violation of the SCRLTA, who Plaintiff is a member of the persons (tenants) the statute was enacted to protect, against the type of harm the SCRLTA was designed to prevent, making Defendants negligent *per se.*

75.     As a direct and proximate cause of Defendants' violation of the SCRLTA, other applicable law, and Defendants' gross negligence, Plaintiff suffered damages as will be more fully set out in discovery in this matter.

12

**FOR A THIRD CAUSE OF ACTION**
PUNITIVE DAMAGES
(All Defendants)

76.     The Plaintiff adopts, re-alleges, and incorporates herein by reference paragraphs 1-75 as if fully set forth therein.

77.     Plaintiff is entitled to punitive damages from the Defendants to punish their reckless, willful, wanton, and/or malicious conduct; and deter similar future conduct by Defendants.

**FOR A FOURTH CAUSE OF ACTION**
VIOLATION OF THE FAIR CREDIT REPORTING ACT (15 USC § 1681)
(All Defendants)

78.     The Plaintiff adopts, re-alleges, and incorporates herein by reference paragraphs 1-77 as if fully set forth therein.

79.     Defendants are "furnishers of information" within the meaning of the Fair Credit Reporting Act codified at 15 USC § 1681.

80.     Defendants furnished inaccurate information to consumer reporting agencies following Plaintiff's Answer and Counterclaim filed in the magistrate court whereby they were placed on notice the information they were reporting was false.

81.     After receiving numerous notices of the unlawful acts and/or falsity of the reporting, Defendants and failed and/or refused to notify the agencies of the inaccurate information, failed and/or refused to report the results accurately, and otherwise failed and/or refused to take actions to remedy the effects of the reporting on Plaintiff as well as Plaintiff's co-signor.

82.     Defendants' conduct was negligent and/or willful.

83.     As a result of Defendants' acts and omissions in reporting Plaintiff and her co-signor, refusal to withdrawal the reporting, and additional acts or omissions discovery will demonstrate, Plaintiff and her co-signor have suffered damages including but not limited to:

a. Loss of creditworthiness;

b. Loss of credit opportunities;

c. Increased borrowing costs;

d. Emotional distress;

e. Out-of-pocket losses;

f. Damage to reputation;

g. Inability to relocate;

h. Statutory damages;

i. Punitive damages due to the willfulness of the violations;

j. Attorney's fees and costs; and

k. Further damages to be shown in discovery of this matter.

**FOR A FIFTH CAUSE OF ACTION**
VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*
(As to Defendant Owner by Acts of Defendant Individual and/or Defendant Property Owner)

84. The Plaintiff adopts, re-alleges, and incorporates herein by reference paragraphs 1-83 as if fully set forth therein.

85. At all relevant times, Defendant Owner owned, controlled, and/or had the right to control the Property pursuant to the terms of Plaintiff's Lease.

86. Defendant Owner engaged Defendants to manage, operate, lease, maintain, and otherwise act on behalf of Defendant Owner with respect to the property.

87. The Defendant Property Manager and Defendant Individual acted as agent, servant, and/or employee of the Defendant Owner in carrying out these responsibilities.

88. At all relevant times, the employees, agents, and representatives of the Defendants were acting within the course and scope of their employment and agency on behalf of all Defendants.

14

89.    Defendant Owner retained the right to control, and in fact exercised control over, the manner and means by which Defendant Property Manager and Defendant Individual performed its duties, upon information and belief, these duties included but were not limited to:

    a.    Policies regarding tenant relations and leasing practices;

    b.    Approval or ratification of charges, fees, and enforcement actions;

    c.    Oversight of maintenance, repairs, and habitability conditions;

    d.    Direction regarding collections, reporting, and dispute handling; and

    e.    Otherwise controls the actions of Defendants and/or Third-Party Defendant Individual.

90.    The wrongful acts and omissions alleged in this Complaint—including but not limited to statutory violations, tortious conduct, and improper reporting—were committed by Defendants and/or their employees within the course and scope of their agency and employment and in furtherance of all the Defendants' business or individual benefit.

91.    Defendant Owner knew or should have known of the conduct by Defendants, its employees, and/or Defendant Individual acting for his own individual benefit, and Defendant Owner either authorized, ratified, or failed to correct such conduct.

92.    Under the doctrine of *respondeat superior*, a principal is vicariously liable for the torts of its agents committed within the scope of their agency.

93.    Defendants, including Defendant Individual acting for his individual benefit, and its employees were acting in furtherance of the Defendants' interests and benefit.

94.    As a direct and proximate result of these acts and omissions, Plaintiff suffered the damages described herein.

95.    Accordingly, Defendant Owner is vicariously liable for the acts and omissions of the Defendant Property Manager, Defendant Individual, and/or their employees, and is responsible for all resulting damages.

**FOR A SIXTH CAUSE OF ACTION**
PIERCING THE CORPORATE VEIL/ALTER EGO LIABILITY
(Defendant Individual)

96.    The Plaintiff adopts, re-alleges, and incorporates herein by reference paragraphs 1-95 as if fully set forth therein.

97.    At all relevant times, Defendant Individual exercised complete domination and control over the other Defendants, their employees, and the business operations of Defendant Property Manager acting on behalf of Defendant Owner.

98.    Upon information and belief, Defendant Property Manager was not operated as a truly separate legal entity, but, rather, functioned as the "alter-ego" and/or mere instrumentality Defendant Individual.

99.    Defendant Individual used such domination and control to commit wrongful acts, including the tortious conduct alleged in this Complaint.

100.    Factors demonstrating that Defendant Individual is the "alter-ego" of Defendant Property Manager include, upon information and belief:

    a.    Failure to observe corporate formalities and maintain proper records;

    b.    Commingling of personal and company funds and assets;

    c.    Undercapitalization of the Defendants at the time of its formation and during its operation;

    d.    Use of Defendants' funds for personal expenses;

    e.    Failure to maintain an arm's-length relationship between Defendants;

16

     f.   Use of the Defendants to perpetrate fraud, injustice, or unlawful conduct;

     g.   Representation to third parties that Defendant Individual and the Defendants were indistinguishable.

101.   Upon information and belief, the Defendants existed as a mere façade for the operations of the Defendant Individual.

102.   Upon information and belief, the Court's adherence to the fiction of the Defendants as separate entities would sanction fraud, promote injustice, and shield the Defendant Individual from liability for wrongful acts.

103.   Upon information and belief, including principles recognized under South Carolina's Uniform Limited Liability Company Act, S.C. Code Ann. § 33-44-101 *et seq,* and governing common law, the Court may disregard the Defendants' separate existence where, as here, equity requires.

104.   Upon information and belief, Defendant Individual's conduct satisfies the two-prong test for piercing the corporate veil under South Carolina law, including:

     i.   Unity of interest between himself and Defendants such that the separate personalities no longer exist; and

     ii.   Circumstances such that adherence to the fiction of separate corporate existence would sanction fraud or promote injustice.

105.   As a direct and proximate result of the Defendant Individual's misuse of the Defendants' form, Plaintiff suffered the damages described herein.

106.   Accordingly, Defendant Individual is personally liable for the acts and omissions of the Defendants, including all tort damages arising from the conduct alleged in this Complaint.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly and severally, and prays for the following relief:

A.  That the Court allow Plaintiff to remain in the Property so long as they continue to pay rent into escrow or the Court;

B.  That Plaintiff be awarded all damages against Defendants jointly and severally including but not limited to statutory damages, punitive damages, consequential damages, general damages, attorneys' fees pursuant to the SCRLTA, FCRA, and/or other applicable law or contract, and all other damages available at law or equity.

C.  That Plaintiff be awarded such other and further relief as the Court deems just and proper.

Respectfully submitted,

**The Stevens Law Firm**

 /s/ Jason S. Stevens
Jason S. Stevens
260 West Coleman Blvd., Ste. D
Mt. Pleasant, South Carolina 29464
(p)(843) 789-3620
(f)(843) 414-7240
jason@jsstevenslaw.com
*Attorney for Plaintiff Rachel Johnson*

April 1, 2026
Mt. Pleasant, South Carolina

18